# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

JEFFREY COHEN, :
　　　　　　　　　　　　　　　　　:
　　　　Plaintiff, :
　　　　　　　　　　　　　　　　　:
　　v. : Civ. No. 17-1352-RGA
　　　　　　　　　　　　　　　　　:
JEFFREY MICELI and JOHN TINSLEY, :
　　　　　　　　　　　　　　　　　:
　　　　Defendants. :
　　　　　　　　　　　　　　　　　:

---

Jeffrey Cohen, FCI Hazelton, Bruceton Mills, West Virginia. Pro Se Plaintiff.

## MEMORANDUM OPINION

March 19, 2019
Wilmington, Delaware


ANDREWS, U.S. District Judge:

Plaintiff Jeffrey Cohen, an inmate at FCI Hazelton in Bruceton Mills, West Virginia, filed this action as a combined Rule 60(d) independent action for relief from judgment based on fraud on the court and complaint for damages and declaratory/injunctive relief raising 42 U.S.C. § 1983 claims and supplemental state law claims. (D.I. 1). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 6). The Court dismissed the original complaint and gave Plaintiff leave to amend. (D.I. 10, 11). An Amended Complaint was filed on May 29, 2018. (D.I. 13). The Court reviews and screens the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).

I. **BACKGROUND**

Plaintiff alleges violations of the United States Constitution pursuant to 42 U.S.C. § 1983, and he raises state law claims. The Amended Complaint states jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1343 (civil rights).[1] The original complaint named Delaware's Insurance Commissioner as the sole defendant. The Amended Complaint names two different defendants, Jeffrey Miceli and John Tinsley. Count I alleges violations of Plaintiff's right to procedural due process (D.I. 13 at ¶¶ 58-63); Count II alleges conspiracy (*id.* at ¶¶ 64-65); Count III alleges unjust enrichment (*id.* at ¶¶ 66-67); and Count IV alleges negligence/gross negligence (*id.* at ¶¶ 68-74).

---

[1] At a minimum, there is federal question jurisdiction over Count I. *See* 28 U.S.C. § 1331.

1

Plaintiff is the founder of Indemnity Insurance Corporation, RRG ("IIC").[2] (D.I. 13 at ¶ 3). He owns 39.6 percent of IIC personally, and the remaining interest is owned through Plaintiff's 100 percent ownership interest of RB Entertainment Ventures, LLC ("RBE") which owned 99 percent of IIC. (D.I. 13 at ¶ 15 and n.2). IIC is a risk retention group domiciled in Delaware. *Cohen v. Stewart*, 2014 WL 2574550, at *1 (D. Md. June 5, 2014). IDG Companies, LLC ("IDG") is an affiliated company owned by Plaintiff. *Id.*

Miceli is described as a private practice attorney who is "special counsel to and supervising counsel for the Delaware Insurance Commissioner." (D.I. 13 at ¶ 4). He is also described as "a representative of the IIC Receivership who maintains considerable authority on behalf of the State of Delaware," who "operates as the Attorney-in-fact and Attorney-at-law on behalf of IIC and the Receivership." (*Id.*).

Tinsley is described as the "owner and President of several private entities that provide regulatory services to various state insurance departments." He and his firms are appointed receivers of IIC. "He maintains considerable authority on behalf of the State of Delaware," and he has been labeled the "Shadow Commissioner" of Delaware. (*Id.* at ¶ 5). The Court notes that the Delaware Insurance Commissioner describes

---

[2] Plaintiff was indicted and charged with fifteen counts of wire fraud, five counts of aggravated identity theft, two counts of money laundering, five counts of making false statements to an insurance regulator, and four counts of obstructing justice. *United States v. Cohen*, 2015 WL 4641072 (D. Md. Aug, 3, 2015). He pled guilty on June 5, 2015, to wire fraud, aggravated identity theft, making false statements to an insurance regulator, and obstructing justice. *Id.* After he was sentenced on December 10, 2015, to a term of 240 months imprisonment, Plaintiff appealed. *See United States v. Cohen*, Crim. No. 14-310-GLR (D. Md.) (D.I. 590). The United States Court of Appeals for the Fourth Circuit dismissed all contentions of error, except for a Sixth Amendment issue and an *Apprendi* issue, and affirmed the district court's ruling on both issues. *See United States v. Cohen*, 888 F.3d 667 (4th Cir. 2018). He has filed a § 2255 petition in the criminal case. *See Cohen*, Crim. No. 14-310-GLR at D.I. 685.

Tinsley as Special Deputy – Examinations for the Delaware Department of Insurance. *See* https://Captive.delaware.gov/ (last visited March 18, 2019). It is not clear how current the website is, as it refers to the former Insurance Commissioner.

"After uncovering evidence that [Plaintiff] had committed fraud in his capacity as [IIC's] CEO and that [IIC] might be insolvent, the Delaware Insurance Commissioner [] petitioned the Court of Chancery for a seizure order." *Cohen v. State ex. rel Stewart*, 89 A.3d 65, 68 (Del. 2014). On May 30, 2013, the Court of Chancery entered a confidential seizure and injunction order that vested the Commissioner with title to all IIC property. *Cohen v. Stewart*, 2014 WL 2574550, at *1 (D. Md. June 5, 2014). On November 6, 2013, the Commissioner filed a petition for the entry of a rehabilitation and injunction order with the consent of IIC's board. *Cohen v. Stewart*, 2014 WL 2574550, at *1. On November 7, 2013, the Court of Chancery entered the order, placed IIC into receivership, and appointed the Commissioner as the receiver.[3] *Id.*

---

[3]Plaintiff has filed numerous cases related to the receivership action. On March 4, 2014, Plaintiff filed suit in the United States District Court for the District of Maryland seeking injunctive relief to recover funds he alleged were unlawfully and improperly seized as part of the IIC receivership because they were outside the receivership's scope. The motion was denied on June 5, 2014 for failure to show the likelihood of success on the merits due to want of jurisdiction and on abstention grounds. *Cohen v. Stewart*, 2014 WL 2574550. On March 13, 2014, Plaintiff commenced a second action in the United States District Court for the District of Maryland raising claims related to the Delaware receivership. *Cohen v. INS Consultants, Inc.*, 2015 WL 847473 (D. Md. Feb. 25, 2015). The matter was dismissed on February 25, 2015 for want of jurisdiction. *Id.* at *1. On February 13, 2015, Plaintiff commenced a third action in the United States District Court for the District of Maryland raising claims related to the Delaware receivership. The case was dismissed on April 2, 2015. *Cohen v. Bealuk*, No. 15-470 (D. Md.) (D.I. 1), *aff'd*, 624 F. App'x 84 (4th Cir. 2015). On October 3, 2016, Plaintiff filed an action in this Court raising claims under 42 U.S.C. § 1983 as well as supplemental claims all related to C.A. No. 8601. *Cohen v. Birrane*, Civ. No. 16-893-RGA (D. Del.). The case was dismissed on June 23, 2017. *Cohen v. Birrane*, 2017 WL 2709566 (D. Del. June 23, 2017). On October 31, 2016, Plaintiff filed a purported independent action under Rule 60(d) in the Eastern District of Pennsylvania, *Cohen v. Tinsley*, Misc. No. 16-210-EGS (E.D. Pa.), again raising claims related to C.A. No.

3

Plaintiff appealed to the Delaware Supreme Court challenging multiple orders. *Cohen v. State ex. rel Stewart*, 89 A.3d at 68. "Central to [the] appeal [was] whether the delinquency proceedings [for IIC] violated the constitutional due process rights of [] Jeffrey B. Cohen." *Id*. Plaintiff had also filed a motion for emergency relief in the Court of Chancery on December 31, 2013. *See* C.A. No. 8601 at BL-549.[4] On April 9, 2014, the Delaware Supreme Court affirmed the Court of Chancery's rulings, holding that Plaintiff was given notice of the allegations against him and a fair opportunity to present his side of the dispute, and concluded there were no violations of his right to due process. *Cohen v. State ex. rel Stewart*, 89 A.3d at 68-69.

In the meantime, on July 26, 2013 and January 16, 2014, verified petitions for liquidation were filed in C.A. No. 8601. *See In the Matter of the Rehabilitation of Indemnity Ins. Corp., RRG*, 2014 WL 1154057, at *3, *8 (Del. Ch. Mar. 21, 2014). On April 10, 2014, the day after the Delaware Supreme Court ruled on the Plaintiff's due process claims, the Court of Chancery entered the liquidation order. *Cohen v. Stewart*, 2014 WL 2574550, at *1. Plaintiff appealed the order, but it was dismissed after he failed to prosecute the appeal. *See Cohen v. State*, 100 A.3d 1020, 2014 WL 4384796 (Del. 2014) (table).

The Amended Complaint alleges that Defendants, acting under color of state law, orchestrated the liquidation of IIC. The IIC Delaware receivership action is currently pending in the Court of Chancery of the State of Delaware, *In the Matter of the*

---

8601. The miscellaneous matter was dismissed on April 5, 2017. *Cohen v. Tinsley*, 2017 WL 1333370 (E.D. Pa. Apr. 5, 2017).

[4]"BL-549" is how Bloomberg Law designates docket items on court dockets.

4

*Liquidation of Indemnity Insurance Corporation, RRG*, C.A. No. 8601. Plaintiff is not a party to C.A. No. 8601, although he has sought to intervene in the matter. (D.I. 13 at ¶ 15). The motion to intervene was recently denied. *In the Matter of the Liquidation of Indemnity Ins. Corp., RRG,* 2018 WL 6431747 (Del. Ch. Dec. 6, 2018).

Plaintiff alleges Defendants, acting under color of law, violated his right to a full and fair hearing. (D.I. 13 at IV.C.). On August 13, 2013, RB Entertainment Ventures, or RBE, moved to intervene in C.A. No. 8601 and stated that IIC was not insolvent. (*Id.* at ¶ 16). One week later, the Court of Chancery held a hearing on the motion to intervene. (*Id.* at ¶ 17). During the hearing, the Court of Chancery stated that a future hearing would litigate the solvency of IIC. (*Id.*). The Court of Chancery denied the motion to intervene and "confirmed that RBE did 'not contest the substance of particularized and verified allegations.'" (*Id.* at ¶ 18). Plaintiff alleges the Court's ruling left him with no ability to conduct discovery or assert evidence to challenge the averments of the defendants. (*Id.*). He argues Defendants convinced the Court of Chancery that evidentiary hearings were not necessary, that Miceli argued to convince the Court of Chancery to block all discovery from Plaintiff, and Defendants' arguments caused the Court of Chancery to rule that he would not have an opportunity to present argument or evidence in C.A. No. 8601. (*Id.* at ¶¶ 19-21).

Plaintiff alleges that when the Court of Chancery ruled that IIC was insolvent and granted the petition for liquidation, the Court evaporated his property interests without permitting him to challenge the averments related to the financial condition of IIC or his other companies. (*Id.* at ¶ 22). Plaintiff filed claims against the receivership as a creditor and main stakeholder. (*Id.* at ¶ 23). He alleges that unnamed counsel for the

Receiver asserted on October 18, 2017, that Plaintiff lacked standing to challenge the Receiver's assertions and had no rights to assert against the estate. (*Id.*).

The Amended Complaint alleges that Defendants, acting under color of state law, orchestrated the liquidation of IIC for financial gain. (*Id.* at ¶ IV.A., ¶ 8). Plaintiff alleges Defendants have paid themselves almost $10 million in fees from the cash reserves of his companies, including IIC. (*Id.* at ¶ 8). The Amended Complaint alleges Tinsley submitted testimony in C.A. No. 8601 to the Court of Chancery that IIC was operating in a "Hazardous Financial Condition," and "Miceli alleged the same averments through testimony." (*Id.* at ¶¶ 9, 11). Plaintiff alleges that as a result, the Court of Chancery seized and liquidated the assets of most of Plaintiff's companies including IIC and IDG. (*Id.* at ¶ 12.) The Amended Complaint alleges that Defendants' averments were false and intentionally misrepresented the facts known to them. (*Id.* at IV.B., ¶ 13).

Plaintiff alleges that Defendants orchestrated a plan to fictitiously overvalue IIC's claim reserves to thwart an opportunity to successfully save the company. (*Id.* at IV.D.). Plaintiff alleges that prior to the receivership, IIC's claims were managed successfully, and when IIC was taken over by Defendants for the period ending June 30, 2013, "its actuary reported that $20.3 million was a 'reasonable estimate for the Company's unpaid policyholder claim obligations.'" (*Id.* at ¶ 26). He alleges that following the $20.3 million opinion, adversarial counsel stated that "IIC was properly reserved at $20 million." (*Id.* at ¶ 27). Plaintiff alleges that prior to his "banishment," he had entertained an offer dated June 20, 2013 (D.I. 13 at 33) to sell 49 percent of IIC and IDG for $25 million, but after his banishment, Defendants controlled the negotiations and successfully enjoined Plaintiff from communication with the suitor.

(*Id.* at ¶ 28). Plaintiff alleges Defendants knew that the deal would resolve all regulatory concerns and terminate lucrative income streams to them, so they manufactured evidence to create a concern for the suitor regarding IIC claim reserves. (*Id.* at ¶¶ 29-35). Plaintiff alleges Defendants used the evidence to adjust the figures and to create a new actuarial analysis which they submitted to the Court of Chancery as a reason that IIC was insolvent. (*Id.* at ¶¶ 35-36). Plaintiff alleges that the new actuarial report resulted in the suitor's withdrawal of its acquisition offer. (*Id.* at ¶ 37).

Plaintiff alleges Defendants orchestrated an unlawful reason to support the liquidation of IIC and to avoid any evidentiary hearings into their assertions. (*Id.* at ¶ IV.E.). Plaintiff alleges, "Defendants coerced [IIC's two] remaining board members to consent to liquidation because the [suitor] deal was quashed, [and used] the authorization [to] submit to the [Court of Chancery] that liquidation was proper and statutorily called for. (*Id.* at ¶ 38). He alleges that Miceli testified in the Court of Chancery that "consent is to be relied upon," and indicated to the Court that a hearing was not necessary, based upon the consent. (*Id.* at ¶¶ 42-43).

Plaintiff alleges that post-deprivation relief is unavailable and inadequate. (*Id.* at IV.F.). Plaintiff filed appeals in the Delaware Supreme Court, and it affirmed the Court of Chancery's finding and rulings. (*Id.* at ¶ 45). Plaintiff alleges that the "Court did not take up the issue regarding the violation of [his] due process rights regarding the submission of false information by defendants [and] did [not] make any findings regarding his due process rights to a full and fair hearing or the deprivation of certain property interests caused by the conduct of the defendants." (*Id.* at ¶ 46). He alleges that another appeal he filed was dismissed following his failure to respond to a show cause notice that he never received because he was incarcerated. (*Id.* at ¶ 47). He

7

alleges that none of the numerous actions filed by him have been decided on the merits. (*Id.* at ¶ 48).

Plaintiff alleges there are continuing violations and specifically refers to a July 14, 2017 letter and an October 2, 2017 certification, when Miceli certified that IIC was insolvent, lacked valid assets, and was underreserved. (*Id.* at ¶¶ 51, 54, 56). Plaintiff alleges the false information again prevented him from procuring a full and fair hearing in the Court of Chancery. (*Id.* at ¶ 54). Plaintiff also alleges that Miceli provided testimony in the form of sworn responses to discovery on September 5, 2017 and October 24, 2017, regarding IIC's insolvency, lack of assets, and underreserving of claims. (*Id.* at ¶¶ 55, 57).

Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages and punitive damages. The injunctive relief sought includes "enjoin[ing] further utilization of the false information by Defendants." (D.I. 13 at 17).

## II. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his

8

complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In addition, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, \_\_U.S.\_\_, 135 S.Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

When reviewing the sufficiency of a complaint, a court should follow a three-step process: (1) consider the elements necessary to state a claim; (2) identify allegations that are merely conclusions and therefore are not well-pleaded factual allegations; and (3) accept any well-pleaded factual allegations as true and determine whether they plausibly state a claim. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

### A. Abstention

The Amended Complaint states, "Nothing herein asks the Court to review any state court decisions. The issues to be decided do not conflict with the Receivership" of IIC pending in C.A. No. 8601. (D.I. 13 at ¶ 2). "Success in this Court still requires the advancement of a judgment in other courts to possibly affect the Receivership." (*Id.*). In the May 8, 2018 Memorandum Opinion and Order, the Court dismissed for want of jurisdiction, and, in the alternative, abstained from Count I under the *Younger* abstention doctrine. (D.I. 11).

10

Under the *Younger* abstention doctrine, a federal district court must abstain from hearing a federal case which interferes with certain state proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971). The Court may raise the issue of *Younger* abstention *sua sponte*. *O'Neill v. City of Philadelphia*, 32 F.3d 785, 786 n.1 (3d Cir. 1994). Under *Younger*, federal courts are prevented from enjoining pending state proceedings absent extraordinary circumstances.[5] *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982). Abstention is appropriate only when: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise the federal claims. *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010). The doctrine applies to proceedings until all appellate remedies have been exhausted, unless the matter falls within one of the *Younger* exceptions.[6] *Huffman v. Pursue Ltd.*, 420 U.S. 592, 608 (1975).

The Court takes judicial notice that the IIC Receivership proceedings remain pending in the Court of Chancery. And Plaintiff continues to participate in them, as evidenced by, for example, BL-1203, filed March 7, 2019, entitled, "Pro Se Jeffrey

---

[5] The abstention doctrine as defined in *Younger v. Harris*, 401 U.S. 37 (1971), provides that federal courts are not to interfere with pending state criminal proceedings. The *Younger* doctrine has been extended to civil cases and state administrative proceedings. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); *Huffman v. Pursue Ltd.*, 420 U.S. 592 (1975).

[6] Exceptions to the *Younger* doctrine exist where irreparable injury is "both great and immediate," *Younger*, 401 U.S. at 46, where the state law is "flagrantly and patently violative of express constitutional prohibitions," *id.* at 53, or where there is a showing of '"bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Id.* at 54.

11

Cohen's First Supplemental Complaint for Equitable Relief to the U.S. District Court of Maryland." The relief sought in the Amended Complaint includes injunctive relief that appears to implicate the receivership proceedings. In particular, Plaintiff seeks to "enjoin the further utilization of the false information." It is within the Court of Chancery's purview to resolve the issue of whether information provided to it is false. Moreover, when viewing the allegations as a whole, it is evident that Plaintiff seeks rulings from this Court as a means to intervene in the Court of Chancery proceedings or to set aside earlier rulings.

As to the second element, Delaware has an important state interest in regulating the insurance industry and protecting the interests of policyholders and creditors from delinquent insurers.

As to the third element, the Court takes judicial notice of the numerous cases filed by Plaintiff in conjunction with the allegations raised in the Complaint. *See* n.3, *supra*. As noted in this Court's May 8, 2018 Memorandum Opinion and Order, Plaintiff has had many opportunities to appeal decisions of the Court of Chancery or to file independent actions in Delaware Courts. (*See* D.I. 10 at 13). Plaintiff's allegations indicate that there are issues in the Receivership action that have yet to be resolved, as, for example, while his motion to intervene has been denied, the case is not over, and the possibility of appeal is not exhausted.

The Amended Complaint alleges that in its rulings, Delaware Supreme Court did not "take up the issue regarding the violation of [his] due process rights" regarding false information, the right to a full and fair hearing, or the deprivation of property interests. (D.I. 13 at ¶ 46). To the contrary, in its April 9, 2014 decision, the Delaware Supreme Court reviewed Plaintiff's claims of violations of his constitutional rights, noting that

12

Plaintiff "raises a multitude of due process claims," and, after carefully examining the record, concluded that Plaintiff was given notice of the allegations against him and a fair opportunity to present his side of the dispute. *Cohen*, 89 A.3d at 86.

Plaintiff has an adequate opportunity to raise his federal claims in state court. Indeed, he has raised many claims in the Delaware Courts and, of course, he may also raise claims brought under Delaware law in the Delaware State courts. *See Lazaridis*, 591 F.3d at 670. Nothing indicates that the Delaware courts are inadequate for addressing any of Plaintiff's claims. When Delaware Courts rule against Plaintiff, that does not make them inadequate. For these reasons, abstention is appropriate.

### B. Statute of Limitations; Immunity

The Court previously dismissed Plaintiff's § 1983 claims and negligence/gross negligence claims as time-barred. Nothing has changed since the May 8, 2018 ruling. (*See* D.I. 10, 11). In the Amended Complaint, Plaintiff added new claims of conspiracy and unjust enrichment that allegedly occurred during the same time.

Count I raises due process claims under 42 U.S.C. § 1983 and Count IV raises negligence and gross negligence claims. In Delaware, negligence and gross negligence claims are subject to a two-year limitations period. *See* 10 Del. C. § 8119. Similarly, for purposes of the statute of limitations, 42 U.S.C. §1983 claims are characterized as personal injury actions and are also subject to a two year limitation period. *Wilson v. Garcia*, 471 U.S. 261, 275 (1983); *see* 10 Del. C. § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996).

Count II alleges conspiracy and Count III alleges unjust enrichment. The Court construes the conspiracy claim as arising under Delaware law. To the extent Plaintiff intended to raise a § 1983 conspiracy claim, it has a two year limitation period as

13

discussed above. For civil conspiracy and unjust enrichment under Delaware law, the limitation period is three years. *See* 10 Del. C. § 8106; *Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, 2005 WL 46553, at *4 (D. Del. Jan. 5, 2005), *aff'd*, 182 F. App'x 994 (2006) (unjust enrichment subject to three year limitation period). In Delaware, personal injury claims accrue at the time of the injury, *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254, 256 (Del. Super. 1969), while § 1983 claims accrue "when the plaintiff knew or should have known of the injury upon which its action is based," *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

The statute of limitations is an affirmative defense that generally must be raised by the defendant, and it is waived if not properly raised. *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006); *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1167 (3d Cir. 1986). "[W]here the statute of limitations defense is obvious from the face of the complaint and no development of the factual record is required to determine whether dismissal is appropriate, *sua sponte* dismissal under 28 U.S.C. § 1915 is permissible." *Davis v. Gauby*, 408 F. App'x 524, 526 (3d Cir. 2010) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)).

As determined in the May 8, 2018 Memorandum Opinion, under the "mailbox rule," Plaintiff filed his original complaint on September 13, 2017. (*See* D.I. 10 at 18 n.11). All claims that accrued prior to September 13, 2014 are time-barred by two and three year limitations period. These are the overwhelming majority of Plaintiff's claims. The remaining allegations, which refer to events that occurred in 2017 (D.I. 13 at ¶¶ 23, 54, 55, 56, 57) as continuing violations, are discussed below.

14

The Amended Complaint refers to acts taken after September 13, 2014. For example, the Amended Complaint alleges that on October 18, 2017, counsel for the receiver asserted that Plaintiff had no rights and/or standing to challenge the receiver's assertions. (D.I. 13 at ¶ 23). Paragraph 23 is not directed to any conduct of either named defendant.

The Amended Complaint contains a "Continuing Violations" Section, Section V, presumably in an effort to avoid a determination that Plaintiff's claims are time-barred. This section alleges in a conclusory manner that Defendants continue a persistent pattern of affirmative conduct to deprive Plaintiff of his rights. Under a continuing violation theory, if a defendant engages in a continual course of conduct and a plaintiff's action is timely as to any act in that course of conduct, the plaintiff may be permitted to litigate violations that are part of the course of conduct. *Van Heest v. McNeilab, Inc.*, 624 F. Supp. 891, 896 (D. Del. 1985). A "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *See Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982).

Tinsley is not mentioned any of the paragraphs in the Continuing Violation Section. Nor is Miceli mentioned in Paragraphs 52 and 53. However, Paragraphs 54 through 57 allege that Miceli provided false information and false discovery responses in a July 14, 2017 letter and an October 2, 2017 certification, when Miceli certified that IIC was insolvent, lacked valid assets, and was underreserved, and on September 5, 2017 and October 24, 2017, when he provided "testimony" for discovery responses in *Indemnity Ins. Corp. RRG v. Cohen*, C.A. No. 8985-CB (Del. Ch.).

Plaintiff alleges that that Miceli is a private attorney retained to represent the Delaware Insurance Commissioner in his capacity as receiver for IIC. "It is well-settled

15

that an attorney does not act under color of state law simply by virtue of representing a state actor as a client. . . ." *Anderson v. Perhacs*, 2013 WL 1336124, at *4 (W.D. Pa. Mar. 29, 2013) (citing *Angelico v. Lehigh Valley Hosp.*, 184 F.3d 268, 277 (3d Cir. 1999). Maceli's representation, alone, does not render him a "person acting under color of state law" under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (a private attorney, even if appointed and paid for by the state, is not acting under color of state law when performing his function as counsel)); *Yoder v. MacMain Law Group, LLC*, 691 F. App'x 59 (3d Cir. 2017) (rejecting plaintiff's argument that private attorney who represented police department is subject to § 1983 liability). Hence, the § 1983 claims raised against him are not cognizable.

Even if Miceli is considered a state actor, he has absolute immunity from his actions, under both common law and § 1983 law, for his actions during the judicial process, including immunity for statements made as a witness or as counsel. *See Briscoe v. LaHue*, 460 U.S. 325, 334-42 (1983) (discussing common law immunity for participants, witnesses (even when a witness perjures himself), and counsel, and extending witness immunity to § 1983 claims); *see also Dollard v. Callery*, 185 A.3d 694 (Del. Super. 2018) (discussing absolute immunity from civil suits).[7] Finally, while all the claims against Tinsley are time-barred, he too is similarly immune from suit for the averments he provided in the Court of Chancery action.

---

[7] It also appears that the claims against Miceli are barred by Delaware's absolute privilege doctrine. *See AGC Networks, Inc. v. Relevante, Inc.*, 2015 WL 1517419, at *3 (D. Del. 2015) (quoting *Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992) ("to the extent that such statements were made in the course of judicial proceedings, they are privileged, regardless of the tort theory by which the plaintiff seeks to impose liability")).

16

Plaintiff was given an opportunity to amend, yet failed to plead cognizable claims. Upon careful review of the allegations and based upon its analysis, the Court finds amendment futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (The court may curtail or deny a request for leave to amend where there is "repeated failure to cure deficiencies by amendments previously allowed" and there would be "futility of amendment."). The Amended Complaint will be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## IV.    CONCLUSION

For the above reasons, the Court will abstain under the *Younger* abstention doctrine and, in the alternative, dismiss the Amended Complaint as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

Plaintiff Cohen filed a similar complaint in No. 16-893-RGA, naming four or five other individuals as Defendants. *See Cohen v. Birrane*, 2017 WL 2709566, *3 (D.Del. June 23, 2017). The Court dismissed the federal claims as legally frivolous. (*Id.* at *6). The claims were time-barred and subject to *Younger* abstention. The original complaint in this case was dismissed for multiple reasons, including *Younger* abstention and the statute of limitations. (D.I. 10 & 11). I nevertheless gave Plaintiff the opportunity to amend. At this time, the Court concludes that permitting amendment would be futile.

I also note that there is an element of harassment to Plaintiff's actions. This is not the first time he has tried to sue Tinsley. On September 14, 2016, Plaintiff sued John Tinsley Regulatory Insurance Services, Inc., seeking damages and an injunction, in the District of Maryland. The case was dismissed on October 5, 2016, for improper venue. *See Cohen v. John Tinsley Regulatory Ins. Servs., Inc.*, 2016 WL 5818427

17

(D.Md. Oct. 5, 2016). Thereafter, Plaintiff sued John Tinsley and Regulatory Insurance Services, Inc., in the Eastern District of Pennsylvania. The case was dismissed on April 5, 2017, on the basis, I think, that no claim was stated. *See Cohen v. Tinsley*, 2017 WL 1333370 (E.D.Pa. Apr. 5, 2017). The Amended Complaint in this case was filed on May 29, 2018. Nor is it the first time that he has brought a frivolous suit in this District based on the same underlying transactions. I dismissed the claims in the original complaint as being legally frivolous. (D.I. 10 at 15, 20, 21-22; D.I. 11). I previously dismissed a different lawsuit against other defendants as frivolous. *See Cohen v. Birrane*, 2017 WL 2709566, *6 (D.Del. June 23, 2017).

An appropriate order will be entered.